# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| **DONALD PUCKETT,** an Oregon resident, on behalf of himself and all similarly situated persons, **PATRICK KAVANAGH**, a Washington resident, on behalf of himself and all similarly situated persons, **THERESA CORDERO**, a California resident, on behalf of herself and all similarly situated persons, | Court File No. _____ |
| | **CLASS ACTION COMPLAINT JURY TRIAL DEMANDED** |
| Plaintiffs, | |
| v. | |
| **MY PILLOW, INC.,** | |
| Defendant. | |

Plaintiffs individually and on behalf of the Class described below, through counsel allege upon personal knowledge and, as to all other matters, upon information and belief, including investigation conducted through counsel the following:

## NATURE OF THE CASE

1.      This is a proposed class action. Plaintiffs, on behalf of themselves and all similarly situated persons, and in the public interest bring this action seeking injunctive relief, monetary damages, costs and attorney fees based on Defendant's acts and omissions. This includes relief for a nationwide class based on fraud, violations of Minnesota Consumer Fraud Act, Minnesota Statute § 325F.69, subdivision 1 ("CFA");

False Statement in Advertising Act, Minnesota Statute § 325F.67 ("FSAA"); the Uniform

Deceptive Trade Practices Act, Minnesota Statute § 325D.44, subdivision 1 ("UDTPA").

2.      This proposed class action also includes subclass claims consisting of

residents of states other than Minnesota, who are bringing claims under both Minnesota

law, and the laws of their states. These states currently include Oregon, Washington, and

California.

3.      These claims relate to two nationwide advertising campaigns by My

Pillow, Inc. Both campaigns involve a business practice commonly referred to as "false

reference pricing."  False reference pricing is the act of falsely overstating the regular

price of a good that is then purportedly offered at a "sale price" or as part of a buy one get

one free offer.

4.      In one campaign, My Pillow, Inc. offered a pillow for sale, and claimed

to include a "free" pillow as part of the purchase. This is commonly known in industry

and is referred to by My Pillow, Inc. as a "buy one get one free" or "BOGO" Promotion.

My Pillow, Inc.'s BOGO Promotions were made in television advertisements seen

throughout the United States, on the MyPillow.com website, on the internet website

YouTube, and on other media, all of which were and are accessible and viewed

throughout the United States.

5.      The My Pillow, Inc. BOGO Promotions were false and deceptive

because My Pillow, Inc. did not provide one pillow "free." Instead, it inflated the regular

price of the pillow being purchased as part of the promotion, resulting in the buyer

purchasing two pillows at or near the combined regular price for two pillows. Stated

alternatively, the pillow that was being sold as part of the BOGO Promotion could be purchased for a substantially lower price without inclusion of the "free" pillow. Defendant misled purchasers into buying two pillows instead of one under the guise that one of the two pillows was free, when it was not.

6.      In another advertising campaign, My Pillow, Inc. offered a pillow for sale, and claimed to provide a 50% discount off its regular price. My Pillow, Inc.'s 50% Off Promotions were made in television advertisements seen throughout the United States, on the MyPillow.com website, on the internet website YouTube, and on other media, all of which were and are accessible and viewed throughout the United States.

7.      The My Pillow, Inc. 50% Off Promotions were false and deceptive because My Pillow, Inc. was not providing a pillow for 50% off its regular price. Instead, it inflated the price of the pillow to approximately twice the regular price, then offered an illusory 50% discount.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1367(a) and §1332, because: (a) plaintiff Puckett is a resident of Oregon, plaintiff Kavanagh is a resident of Washington, plaintiff Cordero is a resident of California, and Defendant My Pillow, Inc. is a Minnesota corporation with its principal place of business in Minnesota, and; (b) the damage claims exceed $75,000 in the aggregate.

9.      This Court also has subject matter jurisdiction pursuant to 28 U.S.C. §1332(d)(2), the "Class Action Fairness Act." On information and belief, there are thousands of Class Members, the amount in controversy exceeds $5,000,000.   On

information and belief, the sales of the My Pillow pillows under the BOGO and 50% Off promotions in each state of the United States are roughly in proportion to the population of each state. Accordingly, based on the population of Minnesota compared to the balance of the United States, more than 98 percent of all sales in the United States under the BOGO and 50% Off promotions were made outside of the state of Minnesota. Plaintiffs and most members of the Class are, therefore, citizens or residents of different states than Defendant.

10.    This Court has personal jurisdiction over Defendant because it is located in Minnesota, and a substantial portion of the wrongdoing alleged in this complaint originated here. Defendant has contacts with this District sufficient to render the exercise of jurisdiction by this Court permissible under traditional notions fair play and substantial justice.

11.    Venue is proper within this District pursuant to 29 U.S.C. §1391(b)(1) and (2).

## THE PARTIES

12.    Plaintiff / Class Representative Donald Puckett ("Puckett") is an individual who resided in the state of Oregon and participated in the BOGO Promotion within Oregon during the applicable class period.

13.    Plaintiff / Class Representative Patrick Kavanagh ("Kavanagh") is an individual who resided in the state of Washington and participated in the BOGO Promotion within Washington during the applicable class period.

14.    Plaintiffs / Class Representative Cordero ("Cordero") is an individual who resided in the state of California and participated in the BOGO Promotion within California during the applicable class period.

15.    Defendant My Pillow, Inc. ("MyPillow") is a Minnesota limited liability company with its principal place of business and numerous retail stores within Minnesota.

16.    MyPillow's 70,000 square foot manufacturing plant is located in Shakopee, Minnesota, where it produces approximately 25,000 pillows per day.

## DEFENDANT'S CONDUCT

### Buy One Get One Free Promotion

17.    During the class period, MyPillow, through its televised advertisements, web pages, radio, and other media (collectively, "advertisements"), presented a "Buy One Get One Free" offer related to its pillows.

18.    MyPillow began its Buy One Get One Free advertisement campaign in 2014 based in substantial part on extended televised advertisements ("infomercials"). MyPillow's infomercials encouraged the viewing public to call in to a toll free number to place an order with an operator.

19.    On information and belief, MyPillow's infomercials were and are running a combined average of approximately 175 to 200 times per day on local and national networks, radio, and television channels, and viewed by a substantial portion of the general public within the United States.

20.     The MyPillow Buy One Get One Free offer was heavily advertised on various television stations, including Fox News. In order to receive a "free" pillow under the Buy One Get One Free offer, the advertisements provided a promotion code. Various alphanumeric promotion codes applied, such as "MY105",  "MY16", and "IMUS".

21.     The My Pillow promotion codes are readily and freely available at no cost to the general public on the MyPillow website, in its commercials, and at various third party websites on the internet, including "Retail Me Not", https://www.retailmenot.com/view/mypillow.com;                  "Coupons.com", https://www.coupons.com/coupon-codes/mypillow/;                  Promospro, http://www.promospro.com/promo-codes-mypillow;                  "Offers.com", http://www.offers.com/mypillow/; and various other similar sites.

22.     The pillows could be purchased under the Buy One Get One Free offer either by calling into the number provided in the advertisements and ordering by telephone, or purchased online through the www.MyPillow.com website.

23.     The advertisements / infomercials stated "call or go online now to order MyPillow and Mike will give you a second pillow absolutely free.  Use the promo code on your screen to get two MyPillows for the price of one."

24.     To participate in the Buy One Get One Free offer, Class Members, including Plaintiffs, listened to the advertisements, and either ordered online or phoned in to My Pillow, Inc. and placed their orders.

25.    The advertising campaign and related Buy One Get One Free offer discussed in paragraphs 20 through 24, above will be referred to as the "BOGO Promotion" throughout the remainder of this Complaint.

26.    Unbeknownst to Plaintiffs and Class Members, they were not getting two pillows "for the price of one." Instead, MyPillow was inflating the regular price of the first pillow to approximately or exactly twice its regular price, thereby passing on the cost of the "free" pillow to the consumer.

27.    For example, those obtaining two queen size pillows as part of the BOGO Promotion paid $99.97.  One Standard / Queen Premium pillow from MyPillow, however, could be purchased from the MyPillow website for a regular price of $49.99 with a readily available "promo code," and from MyPillow on Amazon.com for $59.95 without the use of a "promo code."  When two Standard / Queen Premium pillows were obtained as part of the BOGO Promotion, the "free" pillow was not actually free.  The same was and is true with regard to the My Pillow King Premium pillow purchased under the BOGO promotion.

28.    MyPillow's advertisements regarding the BOGO Promotion have been consistent throughout the class period.

29.    Below are screenshots of MyPillow television advertisements related to the BOGO Promotion during the class period:







**50% Off Promotion**

30.     At various times during the class period, MyPillow, through its televised advertisements, web pages, radio, and other media (collectively, "advertisements"), presented a "50% Off" offer related to its pillows.

31.     MyPillow began its 50% Off advertising campaign in approximately 2011 based in substantial part on extended televised advertisements ("infomercials"). MyPillow's infomercials encouraged viewers to call in to a toll free number to place an order, or visit Defendant's website, www.mypillow.com to order its pillows.

32.     The MyPillow 50% Off offer was heavily advertised on various television stations, including Fox News. In order to receive a pillow under the 50% Off offer, the advertisements provided a promotion code. Various alphanumeric promotion

codes applied. The promotion codes are readily and freely available on the MyPillow website, in its commercials, and at various other third party websites on the internet, as detailed above.

33.     The pillows could be purchased under the 50% Off offer either by calling into the number provided in the advertisements and ordering, or purchased online through the www.MyPillow.com website.

34.     To participate in the 50% Off offer, Class Members listened to the advertisements, and either ordered online, or called in and ordered.

35.     The advertising campaign and related 50% Off offer discussed in paragraphs 30 through 34, above will be referred to as the "50% Off Promotion" throughout the remainder of this Complaint.

36.     Unbeknownst to Class Members, they were not getting pillows for 50% off the regular price. Instead, MyPillow was inflating the regular price of the first pillow to approximately or exactly twice its regular price, then offering "50% Off" of the inflated price to the consumer, resulting in a final price that was at or near the regular price of the pillow.

37.     For example, those obtaining a Queen Sized Premium pillow as part of the 50% Off Promotion were told that one Premium Queen Sized Premium pillow was priced at $99.97, and that by applying the 50% off code, they received the pillow at half of its regular price. One Queen Sized Premium pillow from MyPillow, however, could be purchased from the MyPillow website for a regular price of $49.99 with a readily available "promo code," and from MyPillow on Amazon.com without a "promo code"

for $59.95. When a Queen Sized Premium pillow was obtained as part of the 50% Off Promotion, the 50% Off was illusory and misleading.

38.     MyPillow's advertisements regarding the 50% Off Promotion have been consistent throughout the class period.

## INDIVIDUAL ALLEGATIONS

**Puckett**

39.     At all times relevant to this action, Plaintiff / Representative Puckett was an Oregon resident. Within the class period, Puckett saw the MyPillow advertisement on a television station, listened, understood, and relied on the representation that if he purchased one premium pillow from MyPillow, he would get another premium pillow from MyPillow for "free."

40.     Based on MyPillow's representations, he called the telephone number displayed and paid to purchase one Premium pillow and to get one Premium pillow for "free." His order was placed on December 19, 2015.

41.     Based on Defendant's representations made as part of the television advertisement that Puckett listened to and understood, he believed the regular price of the one pillow plus shipping was $119.96 and that the second pillow was being given to him free of charge. Instead, one Premium pillow could be obtained at the MyPillow website for a regular price of $54.99 plus shipping, and from MyPillow at Amazon.com for $69.95 with free shipping. Thus, the "free" pillow was not actually free. The transaction was instead a disguised purchase of two pillows. Had Puckett known that he was not getting one pillow for free, he would not have engaged in the BOGO offer.

**Kavanagh**

42.    At all times relevant to this action, Plaintiff / Class Representative Kavanagh was a Washington resident. Within the class period, Kavanagh saw the MyPillow advertisement on a television station, listened, understood, and relied on the representation that if he purchased one premium pillow from MyPillow, he would get another premium pillow from MyPillow for "free."

43.    Based on these representations, he called MyPillow and paid to purchase one Premium pillow and to get one Premium pillow for "free." His order, was placed on June 8, 2015.

44.    Based on Defendant's representations made as part of the television advertisement that Kavanagh listened to and understood, he believed the regular price of the one pillow, including shipping and handling was $129.93 and that the second pillow was being given to him free of charge. Instead, one Premium pillow could be obtained at the MyPillow website for a regular price of $54.99 plus shipping, and from MyPillow at Amazon.com for $69.95 with free shipping. Thus, the "free" pillow was not actually free. The transaction was instead a disguised purchase of two pillows. Had Kavanagh known that he was not getting one pillow for free, he would not have engaged in the BOGO offer.

**Cordero**

45.    Plaintiff / Class Representative Cordero is a California resident. Within the class period, she heard the MyPillow advertisement on a radio station (AM 990),

listened, understood, and relied on the representation that if she purchased one premium pillow from MyPillow, she would get another premium pillow from MyPillow for "free."

46.     Based on these representations, she called MyPillow and paid to purchase one Premium pillow and to get one Premium pillow for "free." Her order, was placed on June 15, 2016

47.     Based on Defendant's representations made as part of the advertisement, she believed the regular price of the one pillow plus shipping was $117.95 and that the second pillow was being given to her free of charge. Instead, one Premium pillow could be obtained at the MyPillow website for a regular price of $54.99 plus shipping, and from MyPillow at Amazon.com for $69.95 with free shipping.. Thus, the "free" pillow was not actually free. The transaction was instead a disguised purchase of two pillows. Had Cordero known that she was not getting one pillow for free, she would not have engaged in the BOGO offer.

## PUBLIC'S EXPERIENCE WITH
## DEFENDANT'S BOGO PROMOTION

48.     Consumers have expressed their dismay with the fraudulent and misleading nature of the MyPillow BOGO Promotion and the 50% Off Promotion. The common thread of complaints is based on MyPillow's false representation that the "regular" price of its Premium MyPillow is $99.97 (Queen) or $109.97 (King), when in reality the regular price at which almost all Premium MyPillows can be purchased and are sold on the website and elsewhere, including www.Amazon.com, is approximately half that amount.

49.        These complaints and questions, and MyPillow's responses establish that the "regular" price for the Premium Queen Pillow is $49.99 and the Premium King Pillow is $59.99.   Examples taken from MyPillow's social media / internet commentary include the following:

a.       Richard B:  "No pillow is worth 100.00 dollars.  So this crap you buy one and get on free your [sic] paying for the free one."

MyPillow:  "Hello Richard, Without a promo code, the pillows are $99.97 each.  Two pillows would be $199.94 without a promo code.  If you have a promo code we will either take off the cost of one pillow on the BOGO of [sic] if you want or need a single pillow, we will drop the cost from $99.97 to $49.98, 50% off.  In order to get these prices you must have a valid promo code.  It is the same anywhere with a buy one get one deal. You have to buy the first object at full price to get the second free."

b.       Mark D:  "Buy one get one free.  But if you just want to buy one, it's 50 bucks!  But if you want one free, it's a hundred bucks. This guy is a scammer stay away guys."
MyPillow: "Hello Mark. Without a promo code, the pillows are $99.97 each.  Two pillows would be $199.94 without the promo code.  If you have a promo code we will either take off the cost of one pillow on the BOGO of[sic] if you only want or need a single pillow we will drop the cost from $99.97 to $49.98, 50% off.  In order to get these prices you must have a promo code."

Mark D: "Promo code!"  Come on!  Who charges a hundred bucks for a pillow?  They're fifty bucks a piece.  It's simple logic. You buy one at 50 bucks, you get the next one free.  Promo code! What does that mean? It's a scam. *** If I can buy one at 50 bucks, the next one should be free.  Promo code, or no promo code.  "PROMO CODE=SCAM!!!"

c.       Donnie E:  "I can purchase this pillow for 49.95 without entering a "special promo just for KLOS listeners"  I feel bad for those that paid full price on the internet."

d.      Glenda J:  "If it retails for 59.00 then that's what it should be when he offers the buy one get one free!  They raised the price so it's not really a deal but misleading!"

e.      Michael O:  "The new promotion is a scam!  One at K Mart / Wally World is $49.97.  Buy One, Get One with promo code is 99.94.  How are you getting one free?  This is a shameful attempt to trick customers.  You should be ashamed,,,, Ashamed indeed, pillow man!"

MyPillow:  "*** The Buy one get one free deal is only through our website.  **When we sell our pillows on Amazon/eBay/Walmart they are already marked down to 50% off the original price.  We do this because those retailers do not accept promo codes like the ones you see on TV or Radio.  With the buy one get on free deal you would purchase the first pillow at retail value (99.95 – 109.95) and get the second one free.  If you purchase 2 pillows on amazon/eBay that would come out to be the same prices as the deal on our website."** (Bold added.)

f.      "How can they get away with advertising one pillow for $49 and offering a buy one get on free offer for $99?  This "promo" is all over the tv and their website.  Where is consumer protection on this.  *** Two for one means two pillows for $49, not $99."  Chapel Hill, NC.

g.      "Very disappointed and don't believe "get one free".  Its is [sic] a lie and you are charged for two."  Laguna Woods, CA.

h.      "Question: the my pillow commercial site offers 2 for the price of 1. Does this apply to this site also[?]

Answer: Unfortunately, the Buy one get on free deal is only though our website.  **We sell our pillows on amazon and they are already marked down to 50% off the original price. With the buy one get one free deal you would purchase the first pillow at retail value (99.95-109.95) and get the second one for free. If you Purchase 2 pillows on amazon they would come out to be the same price as the deal from our website**  --- By My Pillow, Inc. on January 1, 2016 SELLER" (Bold added.)

i.    "My Pillow: Most of the places you see the pillows for less than what we charge, are places that buy our classic or premium pillows at a steep discount and set their own prices. We have no control of the prices that our vendors sell the pillow for. We sell both the classic and the premium pillows for the same price; $99.97 each is our regular price. With a valid promo code you can either buy one get one free or get a single pillow at 50% off the normal price which would come to $49.95. **So as you can see, our price when broken down, and using a valid promo code, our price is comparable to other vendors.** *** October 7 at 10:29am. (Bold added.)

50.    Consumers throughout the United States have also complained to various state level consumer protection agencies and/or state attorneys general. Representative examples, along with MyPillow's responses showing the regular price of the pillows include:

a.    Complainant (Washington): "I called the advertisement on television and they stated that I would receive 2 pillows and 2 pillowcases for the amount above, I only received 1 pillow. When I called and talked to them they said to receive another pillow it would be an additional $99. I was quoted a price of $74.97 for 1 pillow and 1 additional pillow for free, with 2 pillowcases. I would like the pillow that was promised to me with the T.V. commercial."

My Pillow response: "Our buy one get one free offer is as follows: our original price for our standard/Queen pillow is $99.98, so you receive 2 pillows for $99.98, plus shipping. The customer only purchased one pillow. The price for 1 King pillow is $109.98, so you receive 2 King pillows for $109.98, plus shipping. If a customer wishes to purchase only 1 pillow, they receive 50% off one pillow. If the customer wishes to receive another pillow they need to purchase the pillow at $54.99…."

b.    Complainant (Washington): "This man advertises on T.V. 'Buy one get one free.' The price he is charging is $99.98 plus

handling of $9.99.  Total of $109.97. He is charging for not one, but two pillows. He is falsely advertising his pillows. You call the same number and purchase a single pillow for $49.99 plus $1.98 for shipping.  When you call you must have a code #.  On 3/4/16 the # was MY700. This man should pay each purchaser back the price of one pillow – plus. This to me is fraud."

My Pillow response:  "The buy one get one free offer is for 1 Standard/Queen Premium pillow is $99.97, plus shipping and tax where applicable. With your promo code, you receive 2 Standard/Queen Premium pillows for $99.97, plus shipping and tax where applicable. If a customer wishes to only purchase 1 pillow, the customer can receive 50% off the retail price."

c.     Complainant SG (Missouri):  "Cons[umer] ordered pillows from co that was supposed to be buy one get one free. Cons discovered they are just double the price for one instead of actually saving money."

d.     Complainant GG (Missouri):  "Consumer states, I made a call to My Pillow 1-800-937-9612) on 2/9/16 and 2/10/16. First to buy Pillows, as advertised, buy one, get one free at $49.99. I was informed the ad was just a Promo and the price was $101 for 2 pillows. I called on 2/10/16 and got the same story. I see their ad on Fox News TV and hear it on Radio Station KSGF every day. I feel like it is false advertisement."

e.     Complainant BB (Missouri):  "Consumer states, when I called the company to order, I asked how much one pillow would be, she said $49.95 so I told her that I would take one get one free, Promo code My41. When I got my credit card charge it was $109 plus change. I called them and asked why that price, she explained that just one pillow was $49.95 but if you buy one get one free the pillow was $99.95. The T.V. ad does not say this anywhere. I feel like this ad is deceptive."

f.     JK (District of Columbia):    "In reference to our telephone conversation earlier today regarding a company out of Minnesota,

DBA; "My Pillow," I believe this company is double charging unsuspecting customers, me being one of them. The company has a nationwide advertising blitz to sell a standard bed pillow which they claim is somewhat revolutionary. They further advertise that when you call, you will receive two pillows for the price of one. On 2 March 2016, at approximately 3:11 pm I called the advertised telephone number (800) 544-8939 and spoke with "Zak" who stated that a pillow cost$ 99.99 but.. ........ I would receive a second pillow for free. I agreed to order and was provided the order# 2 6 8 0 7 9 3. Later on 2 March 2016, I decided to view the "My Pillow" company web site and discovered that pillows are advertised at $49.99 EACH. Accordingly, if an individual purchased two pillows at this price, he/she would ultimately pay the 99.99 ( 99.98 actual) which is in direct conflict with the company claim that you get one pillow "free" for the price of one."

g.    NG (Ohio): "MY Pillow ads say order one pillow and GET ONE PILLOW FREE. I ordered one, I received one. I phoned and asked where my "free" pillow is, the rude girl said you need to order two (for twice the price) and that is your free pillow. I said that is not free, that is two for the price of two. She insisted and tried to talk over me, repeating again and again that two for the price of two = one free pillow. Lindell is a liar, his ads are lies, and he should not be allowed to advertise such a lie. The Minnesota AG should also be contacted. I will do that."

My Pillow Response: "Mr. Guyol's order was only placed for 1 pillow. He did receive 50% off that 1 pillow. The buy one get one free offer is for 1 Standard/Queen Premium pillow is $99.97, plus shipping and tax where applicable. With your promo code, you receive 2 Standard/Queen Premium pillows for $99.97, plus shipping and tax where applicable. Mr. Guyol returned his pillow for a refund and was issued a credit for $53.60 on 6/28/16. The customer is responsible for return shipping and the original shipping is non-refundable."

h.    JM (Ohio): "Consumer said TV commercial said it was buy one get one free for $49.99 and when he called they said the price was $99.99. Consumer explained his dispute and said he should get free pillow as advertised. When he talked to supplier, they did not offer him free pillow stating he has to pay for it."

Ohio AG's office:  "checked company's website and found the deal. [T]ried to check out for purchase and it was $49.99 but quantity was only one and not two.

[T]alked to customer service Hallie who could not explain me the deal properly. [S]he transferred me to Brad who transferred me to manager Sherry. She explained that this deal was for small travel pillows not for regular size. I questioned about quantity at the check out time is only one and not two. Sherry explained me that it's because the quantity ordered is one but you still get your free pillow. The deal for regular size pillow is $99.99 for two. Discussed with Sherry that it does not say much on TV commercials. She explained that in few seconds, this is all we can cover…."

## CLASS ALLEGATIONS

51.    Plaintiffs / Class Representatives bring this action for themselves, and on behalf of all similarly situated persons who participated in the BOGO Promotion and 50% off Promotion within the United States, Minnesota, and any Class States as the Court may determine appropriate for class certification treatment pursuant to Federal Rules of Civil Procedure 23(a) and 23(b).

52.    The Class of persons that Plaintiffs seek to represent are initially defined as:

(a)    The "Nationwide BOGO Class" defined as:

all persons who, at any time during the applicable class period purchased a pillow from Defendant as part of its "Buy One Get One Free" Promotion.

(b)    The "Nationwide 50% Off Class" defined as:

all persons who, at any time during the applicable class period purchased a pillow from Defendant as part of its "50% Off" Promotion.

(c)    The "Oregon BOGO Subclass" defined as:

all Oregon residents who, at any time during the applicable class period purchased a pillow from Defendant as part of its "Buy One Get One Free" Promotion.

(d)    The "Oregon 50% Off Subclass" defined as:

all Oregon residents who, at any time during the applicable class period purchased a pillow from Defendant as part of its "50% Off" Promotion.

(e)    The "Washington BOGO Subclass" defined as:

all Washington residents who, at any time during the applicable class period purchased a pillow from Defendant as part of its "Buy One Get One Free" Promotion.

(f)    The "Washington 50% Off Subclass" defined as:

all Washington residents who, at any time during the applicable class period purchased a pillow from Defendant as part of its "50% Off" Promotion.

(g)    The "California BOGO Subclass" defined as:

all California residents who, at any time during the applicable class period purchased a pillow from Defendant as part of its "Buy One Get One Free" Promotion.

(h)    The "California 50% Off Subclass" defined as:

all California residents who, at any time during the applicable class period purchased a pillow from Defendant as part of its "50% Off" Promotion.

53.    Excluded from participation in this class action are: (a) any Defendant, person, firm, trust, corporation, officer, director, or other individual or entity in which Defendant has a controlling interest or which is related to or affiliated with Defendant, and any current employee of Defendant; (b) all persons who make a timely election to be excluded from the proposed Class; (c) the judge(s) whom this case is assigned and any immediate family members thereof; and (d) the legal representatives, heirs, successors-in-interest or assigns of any excluded party. Plaintiffs reserve the right to expand, limit, modify, or amend this class definition, including the addition of one or more subclasses, in connection with his motion for class certification, or at any other time, based upon, *inter alia*, changing circumstances or new facts obtained during discovery.

54.    This action is brought, and may properly be maintained, as a class action under Federal Rule of Civil Procedure 23. This action satisfies the numerosity, typicality, adequacy, predominance, and superiority requirements of those provisions.

55.    Plaintiffs' fraud claim is appropriate for class-wide certification and treatment because each class representative can prove the elements of their claim on a class-wide basis using the same evidence that would be used to prove those elements in individual actions alleging the same claims.

56.    Plaintiffs' claims based on Minnesota state law are appropriate for class-wide certification and treatment on a nationwide basis because each class representative

can prove the elements of their claim on a class-wide basis using the same evidence that would be used to prove those elements in individual actions alleging the same claims.

57.     Because of the widespread nature and effect of Defendant's misconduct throughout Minnesota and the United States, the claims involve matters of broad public interest, Plaintiffs'/Class Representatives' Minnesota state statutory fraud claims are appropriately brought pursuant to Minnesota Statute § 8.31, subdivision 3a (2010), Minnesota's "private attorney general" statute. Relief is therefore available under the Minnesota statutory fraud based claims stated below for injunctive relief, monetary damages, reasonable attorney fees and costs.

58.     ***Numerosity***:  . Members of the nationwide Class are so numerous that joinder of all members individually into one action, or into individual state-subclass actions, or otherwise, is impractical. On information and belief, the nationwide Class consists of substantially more than 1,000,000 members.

59.     ***Existence and Predominance of Common Questions of Law and Fact***. Common questions of law and fact are shared by Plaintiffs and members of the nationwide Class which predominate over any individual issues.

60.     Common issues of law and fact as to the Nationwide BOGO class include:

    a.    Did Defendant make a material misrepresentation regarding the nature of the transaction?
    b.    Did Defendant make a material misrepresentation regarding the regular price of its MyPillow pillow?

      c.      Did Defendant make a material misrepresentation regarding whether the purchaser was receiving a free MyPillow pillow?

61.      Common issues of law and fact as to the Nationwide 50% off class include:

      a.      Did Defendant make a material misrepresentation regarding whether the purchaser was receiving an actual percentage discount off the regular price?

      b.      If so, what was the actual amount of the discount provided to Class Members by Defendant's 50% Off Promotion?

62.      Common issues of law and fact as to both the Nationwide BOGO class and the Nationwide 50% off class include:

      a.      Did Defendant's conduct consist of the act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise in violation of Minn. Stat. § 325F.69, subdivision 1, the Minnesota Consumer Fraud Act?

      b.      Did Defendant's conduct involve broadcasting or publishing an advertisement containing a material assertion, representation, or statement of fact that was untrue, deceptive, or misleading in violation of Minn. Stat. § 325F.67, the Minnesota False Statement in Advertising Act?

      c.      Did Defendant's conduct involve false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions; and/or engaging in conduct which creates a likelihood of confusion or of misunderstanding in violation of Minn. Stat. § 325D.44, subdivision 1, the Minnesota Uniform Deceptive Trade Practices Act?

      d.      Do the facts and claims in this case implicate the public interest in a manner that makes the full range of damages available under Minn. Stat. § 325F.69, subdivision 1, the Minnesota Consumer Fraud Act, pursuant to Minn. Stat. §

8.31, subdivision 3a (2010), Minnesota's private attorney general statute?

e.  Do the facts and claims in this case implicate the public interest in a manner that makes the full range of damages available under Minn. Stat. § 325F.67, the Minnesota False Statement in Advertising Act, pursuant to Minn. Stat. § 8.31, subdivision 3a (2010), Minnesota's private attorney general statute?

f.  Do the facts and claims in this case implicate the public interest in a manner that makes the full range of damages available under Minn. Stat. § 325D.44, subdivision 1, Minnesota Uniform Deceptive Trade Practices Act, pursuant to Minn. Stat. § 8.31, subdivision 3a (2010), Minnesota's private attorney general statute?

g.  Does Minnesota law allow a claim for money damages under Minn. Stat. § 325D.44, subdivision 1, the Minnesota Uniform Deceptive Trade Practices Act pursuant to Minn. Stat. § 8.31, subdivision 3a, Minnesota's private attorney general statute?

h.  What is the proper measure of damages under Minn. Stat. § 325F.69, subdivision 1, the Minnesota Consumer Fraud Act?

i.  What is the proper measure of damages under plaintiff Minn. Stat. § 325F.67, the Minnesota False Statement in Advertising Act?

j.  What is the proper measure of damages under plaintiff Minn. Stat. § 325D.44, subdivision 1, Minnesota's private attorney general statute?

k.  Do the facts and law of this case support injunctive relief under Minnesota law, and if so, what type of equitable relief is proper?

l.  Do the facts and law of this case provide a basis for the court to award attorney fees and costs under Minnesota law?

63.    For both the Oregon BOGO Subclass and the Oregon 50% Off Subclass, common questions of law and fact include each of the above common questions of law and fact applicable to the Nationwide BOGO Class and Nationwide 50% off Class, and in addition:

   a.    Did Defendant violate ORS §646.608(j) because its conduct constituted a false or misleading representation of fact concerning the reasons for, existence of, or amount of price reduction;

   b.    Did Defendant violate ORS §646.608(p) because its conduct constituted a false or misleading statement about a promotion used to publicize a product;

   c.    Did Defendant violate ORS §646.608(s) because its conduct constituted a false or misleading representation of fact concerning the offering price of, or the person's cost for goods;

   d.    Did Defendant violate ORS §646.608(u) because its conduct was declared to be unfair or deceptive in trade or commerce by administrative rules established by the Oregon Attorney General in accordance with the provisions of ORS chapter 183?

   e.    Was Defendant's conduct proscribed by OAR 137-020-0015(2)(a)(B) which states: "A person engages in conduct which is unfair or deceptive in trade or commerce *** when the person makes a free offer in conjunction with the purchase *** of goods *** When the item to be purchased *** can be purchased for a lesser price without the "free" item?

   f.    Was Defendant's conduct proscribed by OAR 137-020-0015(2)(a)(C) which states: "A person engages in conduct which is unfair or deceptive in trade or commerce *** when the person makes a free offer in conjunction with the purchase *** of goods *** At a price that is higher than the "regular price"?

g.    Was Defendant's conduct proscribed by OAR 137-020-0015(2)(a)(D) which states: "A person engages in conduct which is unfair or deceptive in trade or commerce *** when the person makes a free offer in conjunction with the purchase *** of goods *** That is deceptive or misleading?

h.    Did Defendant violate ORS §646.608(sss) because its conduct was proscribed by ORS §646.644 relating to Free Offers?

i.    Should the court grant equitable relief under ORS §646.638(8)(c)?

j.    What types of equitable relief are appropriate under Oregon law?

k.    Was notice to Defendant required under ORCP 32H, and if so, was proper notice provided by the representative of the Oregon Subclass?

l.    Were Defendant's violations of ORS 646.608 reckless or through knowing use or employment of a method, act, or practice declared unlawful by ORS §646.608?

m.    Are Puckett and Oregon State Subclass Members entitled to an award of actual damages or statutory damages of $200 for each violation under ORS §646.638(8)(a)?

n.    What is the amount of actual damages per violation?

o.    Are punitive damages appropriate against Defendant pursuant to ORS §646.638(8)(b)?

p.    If punitive damages are appropriate, what is the proper amount?

64.    For the Washington BOGO Subclass and the Washington 50% Off Subclass, common questions of law and fact include each of the above common questions of law and fact applicable to the Nationwide BOGO Class and the Nationwide 50% Off Class, and in addition:

a.      Did Defendant violate RCW 19.86.020 by engaging in a method of competition or unfair or deceptive act or practice in the conduct of a trade or commerce?

b.       Does Washington law, under *Panag v. Farmers Ins. Co. of Washington*, 204 P.3d 885, 166 Wash.2d 27 (Wash., 2009) allow the court to look to Federal Trade Commission guidance, 16 CFR 251, Guide Concerning the use of the Word "Free" and Similar Representations, to determine whether Defendant violated RCW 19.86.020?

c.      Does Washington law, under *Panag v. Farmers Ins. Co. of Washington*, 204 P.3d 885, 166 Wash.2d 27 (Wash., 2009) allow this court or jury to look to Federal Trade Commission guidance, 16 CFR 233, Guides Against Deceptive Pricing, to determine whether Defendant violated RCW 19.86.020?

d.      What is the proper measure of actual damages under RCW 19.86.020?

e.      Do the facts of this case provide a basis for the court to treble actual damages pursuant to RCW 19.86.090?

f.      Do the facts of this case provide a basis for the court to award attorney fees pursuant to RCW 19.86.090?

g.      Is equitable relief appropriate under RCW 19.86.090?

h.      What types of equitable relief are appropriate under Washington law?

65.      For the California BOGO Subclass and the California 50% Off Subclass, common questions of law and fact include each of the above common questions of law and fact applicable to the Nationwide BOGO Class and the Nationwide 50% Off Subclass, and in addition:

a.      Did Defendant violate Cal.Civ.Code §1770(a)(5) by representing that goods or services had characteristics, uses, or benefits which they did not have?;

b.      Did Defendant violate Cal.Civ.Code §1770(a)(13) by making false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions?;

c.      Did Defendant violate Cal.Civ.Code §1770(a)(20)?;

d.      Did Defendant make untrue or misleading statements under circumstances that violate the provisions of Cal.Civ.Code §17500?;

e.      Should the court grant equitable relief to the California Class pursuant to Cal.Civ.Code §1780(a)(2) and (3)?

66.    *Typicality*. Each of the Plaintiffs' / Nationwide Class Representatives' claims are typical of the claims of the members of the Nationwide Class. Each Nationwide Class claim arises from the same type events, practices, and course of conduct by Defendant -- the MyPillow BOGO Promotion and/or its 50% Off Promotion. The legal theories asserted by Plaintiffs / Nationwide Class Representatives are the same as the legal theories that will be asserted on behalf of the Nationwide Class -- money damage claims for fraud, and state of Minnesota consumer protection statutes.

67.    Each of the state Subclass Plaintiffs' / Subclass Representatives' claims are typical of the claims other members of that State Subclass. Each state statutory law claim arises from the same type events, practices, and course of conduct by Defendant -- the MyPillow BOGO Promotion and its 50% Off Promotion. The legal theories asserted by each state Subclass Plaintiff / Subclass Representative are the same as the legal

theories that will be asserted on behalf of the other members of that particular state Subclass – i.e. claims based on that particular state's consumer protection statutes.

68.    *Adequacy*. Plaintiffs are willing and prepared to serve the Court and proposed Class and their respective state Subclass in a representative capacity with all of the required material obligations and duties. Plaintiffs will fairly and adequately protect the interests of the Nationwide Class, and each of their state Subclasses, and have no interests adverse to or which directly or irrevocably conflict with the other members of the Nationwide Class or their specific state Subclass.

69.    The self-interests of Plaintiffs / Class Representatives are co-extensive with, and not antagonistic to those of the absent members of the Nationwide Class and members of their respective state Subclasses. Plaintiffs / Class Representatives will represent and protect the interests of the absent Nationwide Class, and their specific Subclass.

70.    Plaintiffs have engaged the services of the following counsel and law firms:  Robert K. Shelquist and Lockridge Grindal Nauen P.L.L.P.; Rick Klingbeil, PC; Robert Curtis and Foley Bezek Behle & Curtis, LLP; and Brady Mertz, PC. Counsel are experienced in litigation, complex litigation, and class action cases, and will protect the rights of and otherwise effectively represent the named class representatives and absent Nationwide Class Members.

71.    *Superiority*. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable. The operative facts relating to Plaintiffs and members of the Nationwide

Class and state Subclasses are the same, the damages suffered by individual Class and Subclass Members are relatively small, the expense and burden of individual litigation makes it inefficient and ineffective for members of the Class and Subclasses to individually redress the wrongs done to them, and proceeding as a class action will resolve thousands of claims in a manner that is fair to Defendant and Class / Subclass Members. There will be no difficulty in the management of this case as a class action with a Nationwide class consisting of members from 50 states, and state Subclasses consisting of members from individual states.

72.    Class Members may be notified of the pendency of this action by several means, including notice on promotional websites and social media related to the BOGO Promotion and 50% Off Promotion, directly based on charge and banking card records used in the transactions, and if deemed necessary or appropriate by the Court, through published notice.

73.    Further, upon information and belief, MyPillow recorded details about the individual purchasers in an electronic form, which provides a direct method of notifying a substantial percentage of Nationwide Class and state Subclass Members.

74.    The prosecution of separate actions by individual Class and Subclass Members would create a risk of inconsistent or varying adjudications with respect to individual members, which would establish incompatible standards of conduct for Defendant. Defendant has acted on grounds that apply generally to the nationwide Class and each state Subclass making equitable relief and damages appropriate to the Class as a whole.

## FIRST CLAIM FOR RELIEF

**(Nationwide BOGO Class)**
**(Intentional Fraud / Deceit – BOGO Promotion)**

75.     On behalf of themselves and the Members of the Nationwide BOGO Class, Plaintiffs / Class Representatives for the Nationwide BOGO Class reallege paragraphs 1 through 74, and further allege:

76.     Defendant represented to all Plaintiffs and to each Class Member that there was a BOGO Promotion through which each would obtain a free pillow from MyPillow if they purchased one pillow from MyPillow at the regular price.  As part of this BOGO Promotion, Defendant misrepresented the regular price of one pillow.  For MyPillow represented that the price of one King Premium pillow (as part of the BOGO Promotion), was at or approximately $109.98 plus shipping. However, one such pillow could have been purchased off of the MyPillow website, www.mypillow.com for $54.99 plus shipping, or from MyPillow through www.Amazon.com for $69.95 with free shipping.

77.     Defendant's misrepresentation was material because it inflated the price of the pillow that it was selling as part of the BOGO Promotion in order to pass along the hidden cost of the "free" pillow to the consumer.

78.     MyPillow knew that its representations concerning the price of the pillow as part of the BOGO Promotion was false, given that it sold a single pillow for far less on both its www.mypillow.com website and on Amazon.com.

79.    MyPillow intended that its misrepresentation regarding the BOGO Promotion be acted on by Plaintiffs and by Members of the Nationwide BOGO Class.

80.    Plaintiffs and Members of the Nationwide BOGO Class were not aware of the true price of the pillow and reasonably relied on the truth of MyPillow's representations.

81.    As a direct and proximate result of their reliance on MyPillow's material misrepresentations, Plaintiffs' / Representatives' for the Nationwide BOGO Class and each of its Members' suffered an ascertainable loss of money.

82.    Because of the widespread and long term nature of Defendant's misconduct, including that it has sold over 5,000,000 pillows to consumers within the United States during the class period, Defendant's misconduct has significantly impacted the public interest throughout the United States.

83.    Each Representative for and Member of the Nationwide BOGO Class is entitled to the following relief:

a.    injunctive relief as necessary to cause Defendant to stop all fraudulent conduct associated with its BOGO Promotion;

b.    actual damages consisting of the difference between the amount each actually paid to obtain two Premium Pillows under the BOGO Promotion, and the regular price of one Premium Pillow; and

     c.     Costs and reasonable attorney fees incurred in bringing this lawsuit.

## SECOND CLAIM FOR RELIEF

**(Nationwide 50% Off Class)**
**(Intentional Fraud / Deceit – 50% Off Promotion)**

84.     On behalf of themselves and the Members of the Nationwide 50% Off Class, Plaintiffs / Class Representatives for the Nationwide 50% Off Class reallege paragraphs 1 through 74, and further allege:

85.     Defendant represented to Plaintiffs and Members of the Nationwide 50% Off Class that there was a 50% Off Promotion through which each would obtain a pillow from MyPillow at 50% off the regular price.  As part of this 50% Off Promotion, Defendant misrepresented the regular price of one pillow.  For example, MyPillow represented that the price of one King Premium pillow (as part of the 50% Off Promotion), was at or approximately $109.98 plus shipping. However, one such pillow could have been purchased off of the MyPillow website, www.mypillow.com for $54.99 plus shipping, or from MyPillow through www.Amazon.com for $69.95 with free shipping.

86.     Defendant's misrepresentation was material because it inflated the price of the pillow that it was selling as part of the 50% Off Promotion to approximately double of the regular price for the pillow, then applied the 50% discount to that fictitious price.

87.     Because of Defendant's use of a fictitious price, Class Members did not actually receive 50% off the regular price of the pillow, but instead received a substantially lower discount, or none at all. This practice is commonly referred to as false reference pricing.

88.     MyPillow knew that its representation concerning the price of the pillow as part of the 50% Off Promotion was false, given that it sold a single pillow for far less on both its www.mypillow.com website and on Amazon.com.

89.     MyPillow intended that its misrepresentation regarding the 50% Off Promotion be acted on by Plaintiffs and Members of the Nationwide 50% Off Class.

90.     Plaintiffs and Members of the Nationwide 50% Off Class were not aware of the true price of the pillow and reasonably relied on the truth of MyPillow's representations.

91.     As a direct and proximate result of their reliance on MyPillow's material misrepresentations, Plaintiffs' / Representatives' for the Nationwide 50% Off Class and each of its Members' each suffered an ascertainable loss of money.

92.     Because of the widespread and long term nature of Defendant's misconduct, including that it has sold over 5,000,000 pillows to consumers within the United States during the class period, Defendant's misconduct has significantly impacted the public interest throughout the United States.

93.     Each Representative for and Member of the Nationwide 50% Off Class is entitled to the following relief:

a.    injunctive relief as necessary to cause Defendant to stop all fraudulent conduct associated with its 50% Off Promotion;

b.    actual damages, consisting the amount necessary to effectuate the terms of the 50% Off Promotion if the regular price of the pillow had been used as the basis of the transaction; and

c.    costs and reasonable attorney fees incurred in bringing this lawsuit.

## THIRD CLAIM FOR RELIEF

### (Nationwide BOGO Class) (Minn. Stat. § 325F.69, sub. 1 – Minnesota Consumer Fraud Act)

94.    On behalf of themselves and Members of the Nationwide BOGO Class, Plaintiffs / Class Representatives for the Nationwide BOGO Class reallege paragraphs 1 through 74, and further allege:

95.    Plaintiffs bring this claim individually and on behalf of members of the Nationwide Class under Minnesota law.

96.    Plaintiffs purchased MyPillow merchandise for their own personal use.

97.    The acts and practices of Defendant as described above deceived Plaintiffs and members of the Nationwide Class as described herein, and have resulted, and will result in, damages to Plaintiff and members of the Nationwide Class.

98.     The MPCFA makes illegal "[t]he act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise."  Minn. Stat. §325F.69.

99.     The MPCFA does not require a showing of damage, and provides for liability "whether or not any person has in fact been misled, deceived, or damaged." *Id*.

100.    By committing the acts alleged above, Defendants have violated the MPCFA.

101.    As a direct and proximate result of Defendant's violation of the MPCFA, Plaintiffs / Representatives for the Nationwide BOGO Class and each of its Members suffered an ascertainable loss of money.

102.    Plaintiffs and Nationwide Class members suffered injuries caused by Defendant's misrepresentations because: (1) they were induced to purchase a product they would not have otherwise purchased if they had known that BOGO promotion was false and misleading; and (2) they paid a price premium due to the false and misleading pricing, advertising, and marketing of Best Buy merchandise.

103.    In accordance with Minn. Stat. §325F.70, and as authorized by Minn. Stat. §8.31, subd. 3a, Plaintiff seeks an order: (1) enjoining Defendant from continuing to conduct business through their fraudulent conduct; (2) requiring Defendant to conduct a corrective advertising campaign; and (3) awarding Plaintiff and the Nationwide Class damages and costs, including reasonable attorneys' fees.

## FOURTH CLAIM FOR RELIEF

**(Nationwide 50% Off Class)**
**(Minn. Stat. § 325F.69, sub. 1 - Minnesota Consumer Fraud Act)**

104.    On behalf of themselves and Members of the Nationwide 50% Off Class, Plaintiffs / Class Representatives for the Nationwide 50% Off Class reallege paragraphs 1 through 74, and further allege:

105.    Plaintiffs bring this claim individually and on behalf of members of the Nationwide Class under Minnesota law.

106.    Plaintiffs purchased MyPillow merchandise for their own personal use.

107.    The acts and practices of Defendant as described above deceived Plaintiffs and members of the Nationwide Class as described herein, and have resulted, and will result in, damages to Plaintiff and members of the Nationwide Class.

108.    The MPCFA makes illegal "[t]he act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise."  Minn. Stat. §325F.69.

109.    The MPCFA does not require a showing of damage, and provides for liability "whether or not any person has in fact been misled, deceived, or damaged."  *Id*.

110.    By committing the acts alleged above, Defendants have violated the MPCFA.

111.    As a direct and proximate result of Defendant's violation of the MPCFA, Plaintiffs / Representatives for the Nationwide BOGO Class and each of its Members suffered an ascertainable loss of money.

112.    Plaintiffs and Nationwide Class members suffered injuries caused by Defendant's misrepresentations because: (1) they were induced to purchase a product they would not have otherwise purchased if they had known that 50% off promotion was false and misleading; and (2) they paid a price premium due to the false and misleading pricing, advertising, and marketing of Best Buy merchandise.

113.    In accordance with Minn. Stat. §325F.70, and as authorized by Minn. Stat. §8.31, subd. 3a, Plaintiff seeks an order: (1) enjoining Defendant from continuing to conduct business through their fraudulent conduct; (2) requiring Defendant to conduct a corrective advertising campaign; and (3) awarding Plaintiff and the Nationwide Class damages and costs, including reasonable attorneys' fees.

### FIFTH CLAIM FOR RELIEF

**(Nationwide BOGO Class)**
**(Minnesota Statute § 325F.67 - Minnesota False**
**Statement in Advertising Act)**

114.    On behalf of themselves and Members of the Nationwide BOGO Class, Plaintiffs / Class Representatives for the Nationwide BOGO Class reallege paragraphs 1 through 74, and further allege:

115.    Defendant, through its BOGO Promotion described above, violated Minn. Stat. § 325F.67, (the "FSAA") by broadcasting or publishing an advertisement

containing a material assertion, representation, or statement of fact that was untrue, deceptive, or misleading.

116.     As a direct and proximate result of Defendant's violation of the FSAA, Plaintiffs / Representatives for the Nationwide BOGO Class and each of its Members suffered an ascertainable loss of money. In accordance with Minn. Stat. §325F.67, and as authorized by Minn. Stat. §8.31, subd. 3a, Plaintiffs seek an order: (1) enjoining Defendant from continuing to conduct business through their fraudulent conduct; (2) requiring Defendant to conduct a corrective advertising campaign; and (3) awarding Plaintiffs and the Nationwide Class damages and costs, including reasonable attorney's fees.

### SIXTH CLAIM FOR RELIEF

**(Nationwide 50% Off Class)**
**(Minnesota Statute § 325F.67 - Minnesota False**
**Statement in Advertising Act)**

117.     On behalf of themselves and the Nationwide 50% Off Class, Plaintiffs / Class Representatives for the Nationwide 50% Off Class reallege paragraphs 1 through 74, and further allege:

118.     Defendant, through its 50% Off Promotion described above, violated Minn. Stat. § 325F.67, (the "FSAA") by broadcasting or publishing an advertisement containing a material assertion, representation, or statement of fact that was untrue, deceptive, or misleading.

119.     As a direct and proximate result of Defendant's violation of the FSAA, Plaintiffs / Representatives for the Nationwide 50% Off Class and each of its Members suffered an ascertainable loss of money.

120.     In accordance with Minn. Stat. §325F.67, and as authorized by Minn. Stat. §8.31, subd. 3a, Plaintiffs seek an order: (1) enjoining Defendant from continuing to conduct business through their fraudulent conduct; (2) requiring Defendant to conduct a corrective advertising campaign; and (3) awarding Plaintiffs and the Nationwide Class damages and costs, including reasonable attorney's fees.

## SEVENTH CLAIM FOR RELIEF

### (Nationwide BOGO Class)
### (Minnesota Statute § 325D.44, sub. 1 - Minnesota Uniform Deceptive Trade Practices Act)

121.     On behalf of themselves and members of the Nationwide BOGO Class, Plaintiffs / Class Representatives for the Nationwide BOGO Class reallege paragraphs 1 through 74, and further allege:

122.     Defendant, through its BOGO Promotion described above, violated Minn. Stat. § 325D.44, subdivision 1, (the "UDTPA") by:

  a.     making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions; and/or

  b.     engaging in conduct which creates a likelihood of confusion or of misunderstanding.

123.    As a direct and proximate result of Defendant's violation of the UDTPA, Plaintiffs / Class Representatives for the Nationwide BOGO Class and each of its Members suffered an ascertainable loss of money.

124.    In accordance with Minn. Stat. §325D.45, Plaintiff seeks an order::

a.    providing injunctive relief as necessary to prevent future violations of Minn. Stat. § 325D.44, subdivision 1;

b.    requiring Defendant to conduct a corrective advertising campaign; ; and

c.    awarding costs and reasonable attorney fees incurred in bringing this lawsuit.

## EIGHTH CLAIM FOR RELIEF

### (Nationwide 50% Off Class)
### (Minnesota Statute § 325D.44, sub. 1 - Minnesota Uniform Deceptive Trade Practices Act)

125.    On behalf of themselves and members of the Nationwide 50% Off Class, Plaintiffs / Class Representatives for the Nationwide 50% Off Class reallege paragraphs 1 through 74, and further allege:

126.    Defendant, through its 50% Off Promotion described above, violated Minn. Stat. § 325D.44, subdivision 1, (the "UDTPA") by:

a.    making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions; and/or

b.    engaging in conduct which creates a likelihood of confusion or of misunderstanding.

127.    As a direct and proximate result of Defendant's violation of the UDTPA, Plaintiffs / Representatives for the Nationwide 50% Off Class and each of its Members suffered an ascertainable loss of money.

128.    In accordance with Minn. Stat. §325D.45, Plaintiff seeks an order::

a.    providing injunctive relief as necessary to prevent future violations of Minn. Stat. § 325D.44, subdivision 1;

b.    requiring Defendant to conduct a corrective advertising campaign; ; and

c.    awarding costs and reasonable attorney fees incurred in bringing this lawsuit.

### NINTH CLAIM FOR RELIEF

**(Oregon BOGO Subclass)**
**(ORS §646.608 - Unlawful Trade Practices)**

129.    On behalf of himself and members of the Oregon BOGO Subclass, Plaintiff / Oregon BOGO Subclass Representative Puckett realleges paragraphs 1 through 74, and further alleges:

130.    Defendant violated:

a.    ORS §646.608(j) because its conduct constituted a false or misleading representation of fact concerning the reasons for, existence of, or amount of price reduction;

b.      ORS §646.608(p) because it constituted a false or misleading statement about a promotion used to publicize a product;

c.      ORS §646.608(s) because it constituted a false or misleading representation of fact concerning the offering price of, or the person's cost for goods;

d.      ORS §646.608(u) because its conduct was declared to be unfair or deceptive in trade or commerce by administrative rules established by the Oregon Attorney General in accordance with the provisions of ORS chapter 183. Specifically, Defendant's conduct was proscribed by OAR 137-020-0015(2)(a)(B), (C), and (D), Unfair or Deceptive Use of "Free" Offers, which state:

"A person engages in conduct which is unfair or deceptive in trade or commerce *** when the person makes a free offer in conjunction with the purchase *** of goods:

***

(B)    When the item to be purchased *** can be purchased for a lesser price without the "free" item; [or]

(C)    At a price that is higher than the "regular price"; [or]

(D)    That is deceptive or misleading; and/or

e.      ORS §646.608(sss) because its conduct was proscribed by ORS §646.644 relating to Free Offers.

131.     Subclass Representative Puckett and each Member of the Oregon BOGO Subclass are entitled to the following relief:

a.     injunctive relief to prevent future violations of ORS §646.644, ORS §646.608, or OAR 137-020-0015.

## TENTH CLAIM FOR RELIEF

### (Oregon 50% Off Subclass)
### (ORS §646.608 - Unlawful Trade Practices)

132.     On behalf of themselves and members of the Oregon 50% Off Subclass, Plaintiff / Oregon 50% Off Subclass Representative Plaintiffs reallege paragraphs 1 through 74, and further allege:

133.     Defendant violated:

a.     ORS §646.608(j) because its conduct constituted a false or misleading representation of fact concerning the reasons for, existence of, or amount of price reduction;

b.     ORS §646.608(p) because it constituted a false or misleading statement about a promotion used to publicize a product; and/or

c.     ORS §646.608(s) because it constituted a false or misleading representation of fact concerning the offering price of, or the person's cost for goods.

134.     Plaintiffs and Members of the Oregon 50% Off Subclass are entitled to the following relief:

a.    injunctive relief to prevent future violations of ORS §646.644, ORS §646.608, or OAR 137-020-0015;

## ELEVENTH CLAIM FOR RELIEF

### (Washington BOGO Subclass)
### (RCW 19.86.020 -- Consumer Protection Act)

135.    On behalf of himself and Members of the Washington BOGO Subclass, Plaintiff / Class Representative Kavanagh realleges paragraphs 1 through 74, and further alleges:

136.    Defendant's BOGO Promotion violated RCW 19.86.020 because its acts and omissions described above constituted unfair or deceptive acts or practices in the conduct of a trade or commerce.

137.    Defendant's conduct was injurious to the public interest within the state of Washington.

138.    Subclass Representative Kavanagh and each Member of the Washington BOGO Subclass are entitled to the following relief:

a.    an order enjoining defendant from further violations of the above provisions pursuant to RCW §19.86.090;

b.    actual damages pursuant to RCW §19.86.090;

c.    three times their actual damages pursuant to RCW §19.86.090; and

d.    attorney fees and recoverable costs pursuant to RCW §19.86.090.

## TWELFTH CLAIM FOR RELIEF

### (Washington 50% Off Subclass)
### (RCW 19.86.020 -- Consumer Protection Act)

139.    On behalf of themselves and Members of the Washington 50% Off Subclass, Plaintiffs reallege paragraphs 1 through 74, and further allege:

140.    Defendant's 50% Off Promotion violated RCW 19.86.020 because its acts and omissions described above constituted unfair or deceptive acts or practices in the conduct of a trade or commerce.

141.    Defendant's conduct was injurious to the public interest within the state of Washington.

142.    Plaintiffs and each Member of the Washington 50% Off Subclass are entitled to the following relief:

> a.    an order enjoining Defendant from further violations of the above provisions pursuant to RCW §19.86.090;
>
> b.    actual damages pursuant to RCW §19.86.090;
>
> c.    three times their actual damages pursuant to RCW §19.86.090; and
>
> d.    attorney fees and recoverable costs pursuant to RCW §19.86.090.

## THIRTEENTH CLAIM FOR RELIEF

### (California BOGO Subclass)
### (Cal.Civ.Code §1750 et seq.)

143.     On behalf of herself and Members of the California BOGO Subclass, Plaintiff / Subclass Representative Cordero realleges paragraphs 1 through 74, and further alleges:

144.     Defendant's conduct violated one or more of the following provisions of the California Consumers Legal Remedies Act:

  a.     Cal.Civ.Code §1770(a)(13) by making false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions; and/or

  b.     Cal.Civ.Code §1770(a)(16) by representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

145.     Subclass Representative Cordero and each member of the California BOGO Subclass are entitled to the following relief:

  a.     an order enjoining Defendant from further violations of the above provisions pursuant to Cal.Civ.Code §1780(a)(2);

  b.     restitution pursuant to  Cal.Civ.Code §1780(a)(3);

c. attorney fees and costs of litigation pursuant to Cal.Civ.Code §1780(e) and Cal. Civ. Proc. Code § 1021.5.

## FOURTEENTH CLAIM FOR RELIEF

### (California 50% Off Subclass)
### (Cal.Civ.Code §1750 et seq.)

146. On behalf of themselves and Members of the California 50% Off Subclass, Plaintiffs reallege paragraphs 1 through 74, and further allege:

147. Defendant's conduct violated one or more of the following provisions of the California Consumers Legal Remedies Act:

a. Cal.Civ.Code §1770(a)(13) by making false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions; and/or

b. Cal.Civ.Code §1770(a)(16) by representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

148. Plaintiffs and each Member of the California 50% Off Subclass are entitled to the following relief:

a. an order enjoining Defendant from further violations of the above provisions pursuant to Cal.Civ.Code §1780(a)(2);

b. restitution pursuant to Cal.Civ.Code §1780(a)(3);

    c.    attorney fees and costs of litigation pursuant to Cal.Civ.Code §1780(e) and Cal. Civ. Proc. Code § 1021.5.

## FIFTEENTH CLAIM FOR RELIEF

**(California BOGO Subclass)**
**(Cal.Civ.Code §17200 (Unfair Competition) and**
**§17500 (False Advertising))**

149.    On behalf of herself and Members of the California BOGO Subclass, Plaintiff / Subclass Representative Cordero realleges paragraphs 1 through 74, and further alleges:

150.    Defendant's conduct violated one or more of the following provisions of the California Business and Professions Code:

    a.    Cal. Bus. & Prof. Code §17200;

    b.    Cal. Bus. & Prof. Code §17500;

    c.    Cal. Bus. & Prof. Code §17508; and/or

    d.    Cal. Bus. & Prof. Code §17509.

151.    Subclass Representative Cordero and each Member of the California BOGO Subclass are entitled to the following relief:

    a.    an order enjoining Defendant from further violations of the above provisions pursuant to Cal.Civ.Code §17203,17204, and 17535;

    b.    restitution pursuant to Cal. Bus. & Prof. Code § 17202 and 17535; and

c.    attorney fees and costs of litigation pursuant to Cal. Civ.

Proc. Code § 1021.5.

## SIXTEENTH CLAIM FOR RELIEF

**(California 50% Off Subclass)**
**(Cal.Civ.Code §17200 (Unfair Competition) and**
**§17500 (False Advertising))**

152.    On behalf of herself and Members of the California 50% Off Subclass,

Plaintiffs reallege paragraphs 1 through 74, and further allege:

153.    Defendant's conduct violated one or more of the following provisions of

the California Business and Professions Code:

a.    Cal. Bus. & Prof. Code §17200;

b.    Cal. Bus. & Prof. Code §17500;

c.    Cal. Bus. & Prof. Code §17508; and/or

d.    Cal. Bus. & Prof. Code §17509.

154.    Plaintiffs and each Member of the California 50% Off Subclass are

entitled to the following relief:

a.    an order enjoining Defendant from further violations of

the above provisions pursuant to Cal.Civ.Code §17203,

17204, and 17535;

b.    restitution pursuant to Cal. Bus. & Prof. Code § 17202

and 17535; and

c.    attorney fees and costs of litigation pursuant to Cal. Civ.

Proc. Code § 1021.5.

## SEVENTEENTH CLAIM FOR RELIEF

### (California BOGO Subclass)
### (Cal. Bus. & Prof. Code §17537.11 (a) and (b). (Free Offer))

155.    On behalf of herself and Members of the California BOGO Subclass, Plaintiff / Subclass Representative Cordero realleges paragraphs 1 through 74, and further alleges:

156.    Defendant's conduct violated Cal. Bus. & Prof. Code §17537.11(a) and (b) relating to free offers.

157.    Subclass Representative Cordero and each Member of the California BOGO Subclass are entitled to the following relief:

  a. an order enjoining Defendant from further violations of the above provisions pursuant to Cal. Bus. & Prof. Code §17537.11(a) and (b);

  b. restitution pursuant to Cal. Bus. & Prof. Code § 17202 and 17535; and

  c. attorney fees and costs of litigation pursuant to Cal. Civ. Proc. Code § 1021.5.

## REQUEST FOR RELIEF

### Case Management

158.    On behalf of themselves, the Nationwide Class, the Oregon, Washington, and California State Subclasses, and any future Subclasses, Plaintiffs / Class and Subclass Representatives seek an Order from this Court:

a.  Certifying this action as a class action as set forth above, or as a class action or issue class as otherwise deemed appropriate by the Court pursuant to a Motion to Certify Class Action to be filed by Plaintiffs in this case;

b.  Appointing Plaintiffs Puckett, Kavanagh, and Cordero as Representatives for the Nationwide BOGO Class; appointing Puckett as Representative for the Oregon BOGO Subclass; appointing Kavanagh as representative for the Washington BOGO Subclass; and appointing Cordero as representative for the California BOGO Subclass.

c.  Approving counsel listed herein as class counsel for the Nationwide Class, the Oregon, Washington, and California State Subclasses, and any future State Subclasses.

d.  Setting a trial by jury for all issues so triable.

## Prayer

### Nationwide Class – Fraud Claims

### (First and Second Claims for Relief)

1)  injunctive relief requiring Defendant to cease all fraudulent conduct;

2)  actual damages; and

3)    costs and reasonable attorney fees.

**Nationwide Class –Minn. Stat. § 325F.69, sub. 1  Minnesota Consumer Fraud Act**

**(Third through Fourth Claims for Relief)**

1)    injunctive relief requiring Defendant to cease all

fraudulent conduct;

2)    actual damages; and

3)    costs and reasonable attorney fees.

**Nationwide Class – Certain State of Minnesota Statutory Claims**

**(Fifth through Eighth Claims for Relief)**

1)   injunctive relief requiring Defendant to cease all

fraudulent conduct;

2)    a corrective advertising campaign; and

3)    costs and reasonable attorney fees.

**State of Oregon Subclass – Oregon Statutory Claims**

**(Ninth and Tenth Claims for Relief)**

1)    injunctive relief;

**State of Washington Subclass – Washington Statutory Claims**

**(Eleventh and Twelfth Claims for Relief)**

1)    injunctive relief;

2)    actual damages;

3)    three times actual damages; and

4)    attorney fees and recoverable costs.

**State of California Subclass – California Statutory Claims**

**(Thirteenth through Fourteenth Claims for Relief)**

    1)    injunctive relief;

    2)    restitution;

    3)    attorney fees and costs of litigation.

**State of California Subclass – California Statutory Claims**

**(Fifteenth through Seventeenth Claims for Relief)**

    1)    injunctive relief;

    2)    restitution; and

    3)    attorney fees and costs.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs hereby demand a trial by jury as to all issues.


Dated:  January 4, 2017          **LOCKRIDGE GRINDAL NAUEN P.L.L.P.**


          By:  <u>s/  Robert K. Shelquist</u>
                W. Joseph Bruckner, #147758
                Robert K. Shelquist, #21310X
                Rebecca A. Peterson, #392663
          100 South Washington Avenue, Suite 2200
          Minneapolis, Minnesota  55401
          Telephone:  (612) 339-6900
          Facsimile:  (612) 339-0981
          wjbruckner@locklaw.com
          rkshelquist@locklaw.com
          rapeterson@locklaw.com

Peter J. Bezek, California Bar No. 102310
Robert A. Curtis, California Bar No. 203870
Kevin D. Gamarnik, California Bar No. 273445
[*PRO HAC VICE APPLICATIONS ANTICIPATED]*
FOLEY BEZEK BEHLE & CURTIS LLP
15 West Carrillo Street
Santa Barbara, California  93101
Telephone: (805) 962-9495
Facsimile: (805) 962-0722
pbezek@foleybezek.com
rcurtis@foleybezek.com
kgamarnik@foleybezek.com


Rick Klingbeil, Oregon Bar No. 933326
[*PRO HAC VICE APPLICATION ANTICIPATED*]
107 SE Washington St., Ste. 233
Portland, Oregon  97214
Telephone: 503-473-8565
Facsimile: 503-427-9001
rick@klingbeil-law.com


Brady Mertz, Oregon Bar No. #970814
[*PRO HAC VICE APPLICATION ANTICIPATED*]
BRADY MERTZ, PC
2285 Liberty Street NE
Salem, OR 97301
Telephone : (503) 385-0121
Facsimile: (503) 375-2218
brady@bradymertz.com


*Attorneys for Plaintiffs*